**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHERYL STREIBIG,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **LCB SENIOR LIVING d/b/a** | : | |
| **MERCER HILL AT DOYLESTOWN,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Cheryl Streibig (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against LCB Senior Living d/b/a Mercer Hill at Doylestown (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Doylestown, PA.
3. Upon information and belief, Defendant LCB Senior Living d/b/a Mercer Hill at Doylestown is an assisted and memory care living center for senior citizens with a location at 2010 S Easton Road, Doylestown, PA 18901 and corporate headquarters located at 315

Norwood Park South, Suite 205, Norwood, MA 02062.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.
13. On or about September 9, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.
14. The Charge was assigned a Charge Number 530-2025-09726 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. On or about September 17, 2025, Plaintiff timely filed an Amended Charge with the EEOC alleging disability discrimination and retaliation.
16. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated July 24, 2026.
17. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.
18. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.
19. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF BECAME DISABLED

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
21. On February 14, 2025, Plaintiff fell and hit her head causing her to suffer a concussion.
22. On February 25, 2025, Plaintiff fell and hit her head again.
23. Plaintiff began to suffer from post-concussion syndrome symptoms afterwards, including, but not limited to, difficulty concentrating, headaches and sensitivity to light and sound.
24. A concussion and post-concussion syndrome are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").
25. The major life activities affected by a concussion and post-concussion syndrome include, but are not limited to, thinking, concentrating, seeing and hearing.

## PLAINTIFF'S EMPLOYMENT HISTORY

26. On or about March 3, 2025, Defendant hired Plaintiff in the position of Business Office Director.
27. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF NOTIFIED DEFENDANT OF HER DISABILITY

28. Plaintiff informed Joe Horwitz, Interim Executive Director, and Maryellen Rappa, Business Office Specialist, of her post-concussion syndrome.
29. Horwitz and Rappa did not ask Plaintiff if she needed any accommodations, and merely told her to feel better.

## PLAINTIFF WAS FORCE TO SEEK TREATMENT DUE TO THE SEVERITY OF HER DISABILITY SYMPTOMS

30. However, Plaintiff's post-concussion syndrome symptoms worsened.

31. On March 26, 2025, Plaintiff was forced to go to AFC Urgent Care due to the severity of her post-concussion syndrome symptoms.

32. The treating physician referred Plaintiff to treat with her doctor.

**PLAINTIFF'S PRIMARY CARE PHYSICIAN REQUESTED A REASONABLE ACCOMMODATION IN THE FORM OF A SCHEDULE CHANGE**

33. On April 2, 2025, Plaintiff was examined by Dr. Li-Hui Zhang, Primary Care Physician.

34. Dr. Zhang wrote Plaintiff a note to adjust her schedule from working 14-hour days to 9 a.m. to 3 p.m.

**PLAINTIFF SUBMITTED DR. ZHANG'S NOTE, BUT DID NOT COMPLETE THE ACCOMMODATION PAPERWORK BECAUSE SHE FEARED RETALIATION**

35. Plaintiff submitted Dr. Zhang's note to Shaline Jaglal, Regional Human Resources Director.

36. On April 3, 2025, Rappa sent Plaintiff accommodation paperwork for her to have Dr. Zhang complete.

37. Plaintiff feared retaliation, so she did not take the accommodation paperwork to Dr. Zhang.

**DEFENDANT ISSUED PLAINTIFF AN UNWARRANTED NEGATIVE PERFORMANCE EVALUATION**

38. In April 2025, Horwitz informed Amanda Palmieri, Corporate Executive Director Specialist, of Plaintiff's disability.

39. In early June 2025, Palmieri and Daniella Pantal, Corporate Executive Director, issued Plaintiff an unwarranted negative performance evaluation.

40. Plaintiff complained that she had been working 14-hour days and had been coming to work on the weekends.

41. Plaintiff also complained that she had been receiving different instructions from Directors.

42. In addition, Elizabeth Lynn, Engagement Director, informed Plaintiff that she believed her role should have an Assistant due to the heavy workload.

**PLAINTIFF WAS HARASSED DUE TO HER DISABILITY**

43. Following Plaintiff's performance evaluation, Kimberly Johnson, Senior Regional Director of Operations, began to overly scrutinize and nitpick Plaintiff's work product.

44. In addition, Janine Spadacinni, Director of Nursing, harassed Plaintiff due to her disability by behaving confrontationally and speaking poorly about Plaintiff to her staff.

**PLAINTIFF COMPLAINED TO JAGLAL ABOUT THE DISABILITY DISCRIMINATION SHE WAS SUBJECTED TO, BUT HER COMPLAINTS WERE NOT ADDRESSED**

45. Plaintiff proceeded to complain to Jaglal multiple times in person that she believed that she was being discriminated against due to her disability.

46. However, Jaglal did not properly address Plaintiff's complaints.

**DEFENDANT DENIED PLAINTIFF'S ACCOMMODATION REQUEST FOR A SCHEDULE CHANGE**

47. On June 30, 2025, Dr. Kansho Abiko, Internist, wrote Plaintiff a note requesting the reasonable accommodation to change her schedule to 7 a.m. to 2 p.m.

48. Plaintiff submitted Dr. Abiko's note to Jaglal.

49. However, Jaglal and Pantal informed Plaintiff that Defendant could not accommodate her and Jaglal suggested that she rest in her office as needed.

50. Plaintiff informed Jaglal that resting in her office was not a sufficient accommodation.

**DEFENDANT DENIED PLAINTIFF'S ACCOMMODATION REQUEST FOR A HYBRID SCHEDULE**

51. On July 2, 2025, Dr. Zhang wrote Plaintiff a note requesting the reasonable accommodation of working from 7 a.m. to 2 p.m. and then three (3) hours remotely.
52. Plaintiff submitted this note to Jaglal.
53. However, Jaglal did not respond to Plaintiff, until after Plaintiff complained to Lori DePage, Legal Counsel, about Defendant's lack of response.
54. On July 15, 2025, Jaglal and Pantal again refused to accommodate Plaintiff via email and suggested that she rest in her office as needed.
55. Plaintiff informed Jaglal that resting in her office was not a sufficient accommodation.
56. Pantal also told Plaintiff Defendant could not accommodate her schedule because she did not want to cover Plaintiff's job duties.
57. Pantal also informed Plaintiff that she had a "Plan B" if Plaintiff went out on medical leave.
58. Importantly, previously on June 25, 2025, Jaglal had asked why Plaintiff did not take her computer home to work remotely after Plaintiff had returned to work after a doctor's appointment was cancelled due to an HVAC issue at the doctor's office.

**PLAINTIFF WAS TREATED IN THE EMERGENCY ROOM DUE TO HER DISABILITY SYMPTOMS**

59. On July 15, 2025, Plaintiff was forced to seek treatment at Doylestown Hospital's Emergency Room due to the severity of her disability symptoms right after work.
60. The treating physician gave Plaintiff medication and told her to follow-up with her physician.

**PLAINTIFF WAS FORCED TO LEAVE WORK EARLY AND CALL OUT OF WORK FOR TWO (2) DAYS DUE TO HER DISABILITY SYMPTOMS**

61. On Saturday, July 26, 2025, Plaintiff reported to work in order to provide coverage for the front desk, which was outside of her normal job duties, due to an employee calling out.
62. Plaintiff experienced continuous vomiting, dizziness and blurred vision due to her disability and informed Pantel of this, but Pantel refused to provide her with relief.
63. Plaintiff remained at work and notified Louisenia Last Name Unknown ("LNU"), Nurse, of her symptoms.
64. Due to the severity of her disability symptoms, Plaintiff was forced to have Wyatt Markovitch, Kitchen Department, temporarily cover the front desk so that she could leave work and attend to her disability symptoms.
65. Plaintiff proceeded to call out of work on July 28 and July 29, due to the severity of her disability symptoms.

**PLAINTIFF WAS PLACED ON A MEDICAL LEAVE OF ABSENCE AND SHORT-TERM DISABILITY ("STD")**

66. On July 29, 2025, Plaintiff was examined by Dr. Indrani Sen Hightower, Neurologist, who placed Plaintiff on a medical leave of absence.
67. Dr. Hightower had Plaintiff schedule an MRI for August 26, 2026.
68. Dr. Hightower scheduled Plaintiff for a follow up appointment on September 2, 2025.
69. In addition, Plaintiff had an appointment scheduled with Dr. Zhang on August 18, 2025.
70. Plaintiff notified Defendant of her placement on the medical leave of absence, her scheduled MRI and follow up appointments and applied for short-term disability ("STD") benefits.

71. Plaintiff's STD was approved.

**JAGLAL HARASSED PLAINTIFF TO HAVE HER PHYSICIAN COMPLETE A MEDICAL QUESTIONNAIRE**

72. However, on August 1, 2025, Jaglal began harassing Plaintiff to have her physician complete a questionnaire certifying her ability to return to work on September 1, 2025, by no later than August 15, 2025.

73. Defendant was well aware that Plaintiff was not scheduled to be examined by her doctors and have her MRI until after August 15, 2025.

74. Plaintiff believed this was done to threaten Plaintiff's job.

**DR. HIGHTOWER EXTENDED PLAINTIFF'S MEDICAL LEAVE OF ABSENCE**

75. On September 1, 2025, Dr. Hightower examined Plaintiff and extended her medical leave of absence until October 13, 2025.

76. Plaintiff informed Defendant of this and remained on medical leave.

**PLAINTIFF FILED A CHARGE OF DISCRIMINATION WITH THE EEOC AGAINST DEFENDANT**

77. On September 9, 2025, Plaintiff filed an EEOC Charge of Discrimination alleging disability discrimination and retaliation against Defendant.

78. The EEOC issued the Charge a Charge Number of 530-2025-09726.

**DEFENDANT TERMINATED PLAINTIFF**

79. On September 16, 2025, Jaglal emailed Plaintiff a termination letter dated September 15, 2025.

80. Defendant alleged the reason for Plaintiff's termination was that it did not have information regarding Plaintiff's return to work date.

81. This is pretext, as Plaintiff had kept Defendant up to date with the status of her medical leave.

82. Defendant discriminated against Plaintiff due to her disability, failed to accommodate her and retaliated against her for requesting a reasonable accommodation and for complaining about disability discrimination in violation of the ADA and the PHRA.

83. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

85. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

86. Plaintiff was qualified to perform the job.

87. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

88. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

89. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

90. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

91. The purported reason for Defendant's decision is pretextual.

92. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

93. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

94. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

95. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION PENNSYLVANIA HUMAN RELATIONS ACT

96. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

97. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

98. Plaintiff was qualified to perform the job.

99. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

100. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

101. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

102. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

103. The purported reason for Defendant's decision is pretextual.

104. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

105. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

106. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

107. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

108. Plaintiff engaged in activity protected by the ADA.

109. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

110. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

111. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

**COUNT IV – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

112. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

113. Plaintiff engaged in activity protected by the PHRA.

114. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

115. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Cheryl Streibig, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged,

all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 22, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*